1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:   (323) 979-2063
5  Facsimile:    (323) 488-6748
6
7  Attorney for Plaintiff
   Beverly Hills Regional Surgery Center, L.P.
8
9                UNITED STATES DISTRICT COURT
10
11              CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| Beverly Hills Regional Surgery Center, L.P. | Case No.: 2:22-cv-01217-RSWL-MRW |
| Plaintiff, | First Amended Complaint For: |
| v. | 1. FRAUD<br>2. NEGLIGENT MISREPRESENTATION; AND<br>3. PROMISSORY ESTOPPEL |
| CareFirst BlueCross and BlueShield and DOES 1-10, | Or in the alternative- |
| Defendant. | 4. RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B) |
| | **(Jury Trial Requested)**<br>**Total Damages - $235,000.00** |

Complaint

1      Plaintiff Beverly Hills Regional Surgery Center, L.P. (hereinafter referred to

2  as "PLAINTIFF" or "Medical Provider") complains and alleges:

3                                    **PARTIES**

4      1.      Plaintiff, Medical Provider, is and at all relevant times was a medical

5  corporation, organized and existing under the laws of the State of California.

6  Medical Provider is and at all relevant times was in good standing under the laws of

7  the State of California.

8      2.      DEFENDANT, CareFirst BlueCross and BlueShield., is and was

9  licensed to do business in and is and was doing business in the State of California,

10 as an insurer or administrator of insurance. PLAINTIFF is informed and believes

11 that DEFENDANT is licensed by to transact the business of insurance in the State

12 of California.  DEFENDANT is, in fact, transacting the business of insurance in the

13 State of California and is thereby subject to the laws and regulations of the State of

14 California.

15     3.      The true names and capacities, whether individual, corporate,

16 associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown

17 to PLAINTIFF, who therefore sues said defendants by such fictitious names.

18 PLAINTIFF is informed and believes and thereon alleges that each of the

19 defendants designated herein as a DOE is legally responsible in some manner for

20 the events and happenings referred to herein and legally caused injury and damages

21 proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to

22 amend this Complaint to insert their true names and capacities in place and instead

23 of the fictitious names when they become known to it.

24     4.      At all times herein mentioned, unless otherwise indicated,

25 DEFENDANT/s were the agents and/or employees of each of the remaining

26 defendants, and were at all times acting within the purpose and scope of said

27 agency and employment, and each defendant has ratified and approved the acts of

28 his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible

1   authority to act on each other's behalf in certifying or authorizing the provision of

2   services; processing and administering the claims and appeals; pricing the claims;

3   approving or denying the claims; directing each other as to whether and/or how to

4   pay claims; issuing remittance advices and explanations of benefits statements;

5   making payments to Medical Provider and its Patient.

6   **GENERAL ALLEGATIONS**

7         5.       Medical Provider's fraud, promissory estoppel and negligent

8   misrepresentation causes of action are based upon the individual and proper rights

9   of Medical Provider in its own individual capacity and are not derivative of the

10  contractual or other rights of the Medical Provider's Patient.  Medical Provider's

11  fraud, promissory estoppel and negligent misrepresentation causes of action

12  asserted in this complaint arise out of the Medical Provider's interactions with

13  DEFENDANT and DOES 1 through 10, inclusive and are derived from the

14  representations and warranties made during those conversations amongst those

15  parties. Medical Provider does not in any way, seek to enforce the contractual rights

16  of the Medical Provider's Patient, through the Patient's insurance contract, policies,

17  certificates of coverage or other written insurance agreements with respect to

18  Medical Provider's fraud, promissory estoppel and negligent misrepresentation

19  causes of action.

20        6.       This complaint arises out of the failure of DEFENDANT to make

21  proper payments and/or the underpayment to Medical Provider by DEFENDANT

22  and DOES 1 through 10, inclusive, of amounts due and owing now to Medical

23  Provider for surgical care, treatment and procedures provided to Patient, who are

24  insureds, members, policyholders, certificate-holders or were otherwise covered for

25  health, hospitalization and major medical insurance through policies or certificates

26  of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,

27  inclusive.

28

- 3 -
COMPLAINT

1    7.    Medical Provider is informed and believes based on DEFENDANT's
2    oral and other representations that the Patient were insureds of DEFENDANT
3    either as subscribers to coverage or dependents of subscribers to coverage under a
4    policy or certificate of insurance issued and underwritten by DEFENDANT and
5    DOES 1 through 10, inclusive, and each of them.  Medical Provider is informed
6    and believes that the Patient entered into a valid insurance agreement with
7    DEFENDANT for the specific purpose of ensuring that the Patient would have
8    access to medically necessary treatments, care, procedures and surgeries by medical
9    practitioners like Medical Provider and ensuring that DEFENDANT would pay for
10   the health care expenses incurred by the Patient.

11    8.    Medical Provider is informed and believes that DEFENDANT and
12   DOES 1 through 10, inclusive, and each of them, received and continue to receive,
13   valuable premium payments from the Patient and/or other consideration from
14   Patient under the subject policies applicable to Patient.

15    9.    It is standard practice in the health care industry that when a medical
16   provider enters into a written preferred provider contract with a health plan such as
17   DEFENDANT, that a medical provider agrees to accept reimbursement that is
18   discounted from the medical provider's total billed charges in exchange for the
19   benefits of being a preferred or contracted provider.

20    10.    Those benefits include an increased volume of business, because the
21   health plan provides financial and other incentives to its members to receive their
22   medical care and treatments from the contracted provider, such as advertising that
23   the provider is "in network", and allowing the members to pay lower co-payments
24   and deductibles to obtain care and treatment from a contracted provider.

25    11.    Conversely, when a medical provider, such as Medical Provider, does
26   not have a written contract or preferred provider agreement with a health plan, the
27   medical provider receives no referrals from the health plan.

28

- 4 -

COMPLAINT

1    12.    The medical provider has no obligation to reduce its charges. The

2    health plan is not entitled to a discount from the medical provider's total bill charge

3    for the services rendered, because it is not providing the medical provider with in

4    network medical provider benefits, such as increased patient volume and direct

5    payment obligations.

6    13.    The reason why medical providers have chosen to forgo the benefits of

7    a contract with a payor is that, in recent years, many insurers including

8    DEFENDANT's contracted rates for in-network providers have been so meager,

9    one-sided and onerous, that many providers like Medical Provider have determined

10   that they cannot afford to enter into such contracts.  As a result, a growing number

11   of medical providers have become non-contracted or out of network providers.

12   14.    Payors and insurers still want their patients to be seen and so they

13   commonly promise to pay out of network providers a percentage of the market rate

14   for the procedure, also described as, an average payment for the procedure

15   performed or provided by similarly situated medical providers within similarly

16   situated areas or places of practice. Rather than use the words market rate to

17   simplify terms, payors have long used words or combinations of words such as

18   usual, reasonable, customary and allowed, all to mean an average payment for a

19   procedure provided by similarly situated medical providers within similarly situated

20   areas or places of practice ("UCR").

21   15.    The United States government provides a definition for the term UCR.

22   "The amount paid for a medical service in a geographic area based on what

23   providers in the area usually charge for the same or similar medical service. The

24   UCR amount sometimes is used to determine the allowed amount."[1]

25

26   [1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (August 11,
     2021), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/
27   (defining UCR)

28

COMPLAINT

16.     Based upon these criteria, Medical Provider's charges are usual, reasonable and customary.  Medical Provider charged DEFENDANT the same fees that it charges all other payors.  Medical Provider's fees are comparable to the prevailing provider rates for other surgeons in comparable geographic areas to the one in which the services were provided.

17.     DEFENDANT uses the term UCR and understands its meaning within the industry.

18.     When DEFENDANT uses the term UCR for the price of a medical service, DEFEDANT will utilize a medical bill database from Fair Health Inc. to determine the exact dollar amount to be paid for a medical claim.

19.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT and it is available for free in a more limited fashion for use by consumers.[2]

20.     When a medical provider like PLAINTIFF is told that DEFENDANT will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

21.     In the alternative and separately, Medical Provider is owed proper reimbursement in accordance with the Patient's health plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 949 (9th Cir. 2009).

22.     The fact that Medical Provider has a right to payment based also on an assignment made by the Patient to Medical Provider is entirely separate and irrelevant to Medical Providers individual right stated above. *See Mem'l Hosp. Sys.*

---

[2] *See* fairhealthconsumer.org, (February 19, 2020), https://www. fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

COMPLAINT

1    *V. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) ("assignment of

2    benefits is irrelevant to [plaintiff's] right to recover").

3        23.    Medical Provider is informed based solely on DEFENDANT's

4    representations that the Patient's health plan at issue in this litigation is a health

5    plan governed by the Employee Retirement Income Securities Act of 1974

6    ("ERISA"). Based on DEFENDANTS' representations, Medical Provider asserts

7    that the Patient's health plan is an ERISA health plan ("ERISA Plan").

8        24.    Prior to services being rendered, Medical Provider obtained an

9    assignment from the Patient granting Medical Provider the right to step into the

10    shoes of the Patient with respect to Patient's rights under the Patient's ERISA Plan,

11    including but not limited to the right to seek proper reimbursement for medical

12    services as well as to seek legal redress for DEFENDANT's failure to properly

13    administer the terms of the ERISA Plan.

14        25.    For the Patient's claim, DEFENDANT has waived or are estopped

15    from asserting an anti-assignment provision were one even to exist. *See Beverly*

16    *Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*,

17    983 F.3d 435, 437 (9th Cir. 2020).

18        26.    For the claim at issue in this suit, Medical Provider has spent

19    significant time and money in jumping through the necessary hoops in exhausting

20    its administrative remedies under ERISA.

21        27.    Medical Provider sent out multiple appeal letters to DEFENDANT and

22    any further appeals would be futile as Medical Provider has received letters stating

23    that DEFENDANT's decision is final.

24        28.    In either case, Medical Provider has a reputation for providing high

25    quality care and, as a result, Medical Provider brings this suit to obtain appropriate

26    compensation for Medical Provider's services.

27

28

## SPECIFIC FACTS

## PATIENT KH

29.     On April 20, 2019, Patient KH received a surgical procedure from Medical Provider.

30.     On February 26, 2019 at 9:28 a.m. so as to determine whether or not to provide services, Medical Provider's employee, Terri, obtained representations from DEFEDANT's representative, Sam S., regarding the manner in which Medical Provider would be paid for services.

31.     The reference number for the call was 02190570631000.

32.     Medical Provider asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

33.     Defendant represented to Medical Provider that Patient's deductible is and was $800.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,00.00 and that to date for that calendar year Patient had paid $0.

34.     Medical Provider asked: does Defendant pay based on UCR for procedure codes 58660, 58740, 58925, 58558 and 52000 and other similar codes within the same family?

35.     Defendant represented to Medical Provider that for services in connection with procedure codes 58660, 58740, 58925, 58558 and 52000, Defendant pays the UCR rate.

36.     Medical Provider asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 58660, 58740, 58925, 58558 and 52000?

37.     Defendant represented to Medical Provider that for services in connection with procedure codes 58660, 58740, 58925, 58558 and 52000, Defendant's payment would not be based on the Medicare Fee Schedule.

38.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

COMPLAINT

39.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

40.     DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

41.     At the time of the calls, Defendant had access or was looking at information which directly contradicted the representations it was making to Medical Provider.

42.     Defendant knew at the time of the representation that it would not be paying for services at the UCR rate.

43.     Defendant knew at the time of the representation that it would be making payment based on a percentage of Medicare.

44.     By DEFENDANTS' representations, DEFENDANTS intended for Medical Provider to provide services to the Patient.

45.     DEFENDANTS intended for Medical Provider to rely on the information provided during the authorization and verification calls.

46.     MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could only rely on the representations or misrepresentations of Defendant and its agents.

47.     Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical

COMPLAINT

1    services. Medical Provider took DEFENDANT at its word and promises and

2    provided services based solely on those promises and representations.

3        48.    In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B)

4    DEFENDANT has failed to reimburse Patient and now Medical Provider in

5    accordance with the terms of Patient's ERISA Plan.

6        49.    On or about February 2019, Patient assigned all rights to

7    reimbursement for medical services under Patient's ERISA plan to Medical

8    Provider.

9        50.    Following the medical procedure, Medical Provider submitted a bill or

10   UB-04 to DEFENDANT which stated that Medical Provider had received an

11   assignment from the Patient.

12       51.    At no point in time did DEFENDANT state that there was an anti-

13   assignment provision in Patient's ERISA Plan.

14       52.    Over the next couple of months, Medical Provider sent numerous

15   appeal letters to DEFENDANT in accordance with ERISA to exhaust all of

16   Patient's and now Medical Provider's administrative remedies.

17       53.    Medical Provider was never informed during this process that Patient's

18   plan had an anti-assignment provision and that DEFENDANT would only speak

19   with the Patient.

20       54.    Medical Provider alleges that according to Patient's Plan, Defendant

21   was obligated to pay Medical Provider the "Max Allowed Amount" or "Allowed

22   Amount" and that said amount was determined based on Medical Provider's billed

23   charge.

24       55.    Defendant as a result was obligated to pay based on Medical

25   Provider's billed charge.

26       56.    Defendant, however, determined to make payment not based on

27   Medical Provider's charge.

28       57.    Defendant instead made payment based on a percentage of Medicare.

COMPLAINT

58. As a result, DEFENDANT violated its duty to remit the appropriate payment under the terms of Patient's ERISA Plan.

59. Further, a review of the specific explanation of benefits ("EOB") sent by DEFENDANT also demonstrate that DEFENDANT also violated its duty by failing to give a meaningful explanation within the EOB of the basis for DEFENDANT's calculation and ultimate payment amount for the medical services received by Patient.

60. Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $227,541.00.

61. Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

62. DEFENDANT processed the bill and made a payment of $1,593.08.

63. The amount paid was well below the Medical Provider billed amount as required by the Patient's health plan and well below the represented and promised UCR rate promised during the calls.

64. As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**FIRST CAUSE OF ACTION**

**FOR FRAUD**

65.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein, except for those specifically addressing Medical Provider's ERISA cause of action such as 46-57.

66.     DEFENDANTS falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

67.     DEFENDANTS knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

68.     DEFENDANTS provided this information with the intent that Medical Provider provide services to DEFENDANTS' insured.

69.     Medical Provider then relied on DEFENDANTS' misrepresentation and provided the services to Patient.

70.     Medical Provider and now HAMOC has been damaged in not receiving payment at the represented UCR rate.

## SECOND CAUSE OF ACTION
## FOR NEGLIGENT MISREPRESENTATION

71.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein, except for those specifically addressing Medical Provider's ERISA cause of action such as 46-57.

72.     DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

73.     DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

74.     DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

75.     Medical Provider then relied on DEFENDANT's misrepresentation and provided the services to Patient.

76.     Medical Provider has been damaged in not receiving payment at the represented UCR rate.

## SECOND CAUSE OF ACTION
## FOR PROMISSORY ESTOPPEL

77.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein, except for those specifically addressing Medical Provider's ERISA cause of action such as 46-57.

78.     DEFENDANT promised and asserted that the procedure to be performed and which was performed for and on the Patient was covered, authorized, certified and would be paid for at the rate of UCR.

79.     Medical Provider only decided to provide services because they were assured that Medicare was not part of the calculation of payment and that Medical Provider would be paid at the UCR rate.

80.     At all times both DEFENDANT and PLAINTIFF understood that a promised payment rate of UCR meant that DEFENDANT would be calculating the payment rate using a medical claims database created by Fair Health Inc.

81.     After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide the procedure on the Patient expecting that payment would be made at that rate.

82.      As a direct and proximate result of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate less any applicable MOOP or deductible/coinsurance.

83.     The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing the services to Patient based on DEFENDANT'S promise of payment at the UCR

COMPLAINT

1   rate.  As a further direct, legal and proximate result of Medical Provider's

2   detrimental reliance on the misrepresentations of defendants, and each of them,

3   Medical Provider has been damaged due to the loss of monies expended in

4   providing said services for which it was significantly underpaid and has suffered

5   damages in the loss of use of the proceeds and income to be derived from the

6   services.

7          84.    In light of the material representations and misrepresentations of

8   DEFENDANT made to Medical Provider, and of Medical Provider's reliance on

9   DEFENDANT's representations, and based upon Medical Provider's detrimental

10  reliance thereon, DEFENDANT, and each of them, are estopped from denying

11  payment and indemnification for Patient's treatments at the UCR rate and Medical

12  Provider is now entitled to the value enumerated by that calculation. An amount to

13  be determined at the time of trial.

### THIRD CAUSE OF ACTION

### ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO
### PAY ERISA PLAN BENEFITS

17         85.    Medical Provider incorporates by reference all previous paragraphs as

18  though fully set forth herein, except for those which are based on Medical

19  Provider's communications with Defendant and which serve as the basis for

20  Medical Provider's promissory estoppel and negligent misrepresentation causes of

21  action.

22         86.    This cause of action is alleged by Medical Provider for relief in

23  connection with claims for medical services rendered in connection with healthcare

24  benefits plans administered and/or underwritten by DEFENDANTS.

25         87.    Medical Provider seeks to recover benefits and enforce rights to

26  benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Provider has standing to pursue

27  these claims as the assignee of member/patient's rights. As the assignee of rights,

28  Medical Provider is a "beneficiary" entitled to collect benefits, and is the

1    "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes

2    actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against

3          88.    DEFENDANT was the party with actual control over the benefit and

4    payment determinations with respect to Medical Provider's claims.

5          89.    DEFENDANT was a direct participant in the claims administration

6    process.

7          90.    By reason of the foregoing, Medical Provider is entitled to recover

8    ERISA benefits due and owing in an amount to be proven at trial, and Medical

9    Provider seeks recovery of such benefits by way of the present action.

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE,** Beverly Hills Regional Surgery Center, L.P., Inc. prays for judgment against defendants as follows:

    1.    For compensatory damages in an amount to be determined, plus statutory interest;

    2.    For restitution in an amount to be determined, plus statutory interest;

    3.    For a declaration that DEFENDANTS are obligated to pay plaintiff all monies owed for services rendered to the Patient; and

    4.    For such other relief as the Court deems just and appropriate

.

Dated: March 1, 2022            LAW OFFICE OF JONATHAN A. STIEGLITZ

                                   By: /s/ Jonathan A. Stieglitz
                                        JONATHAN A. STIEGLITZ
                                        Beverly Hills Regional Center, L.P.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Beverly Hills Regional Center, L.P., hereby demands a jury trial as provided by law.

Dated: March 1, 2022            LAW OFFICE OF JONATHAN A. STIEGLITZ

                                   By: /s/ Jonathan A. Stieglitz
                                        JONATHAN A. STIEGLITZ
                                        Attorneys for Plaintiff,
                                        Beverly Hills Regional Center, L.P.

COMPLAINT